Sue BURKE *v.* Kenneth ELMORE,
Vicki Strange, Craig Cotner,
Arnold Elmore, and the City of Huntington

99-1376 14 S.W.3d 872

Supreme Court of Arkansas
Opinion delivered April 20, 2000
[Petition for rehearing denied May 25, 2000.]

*J.*

*Michael Fitzhugh*, Judge;

*Oscar Stilley*, for appellant.

*Orville C. Clift, P.A.*, by: *Orville C. Clift*, for appellees.

ROBERT L. BROWN, Justice. Appellant Sue Burke is a resident of the City of Huntington, a city of the second class located in Sebastian County. She brought suit on behalf of herself and other adversely affected taxpayers against the appellees who are various city officials as well as the City itself for the refund of funds which, she contended, were illegally paid and, therefore, constituted an illegal exaction. The circuit court denied her relief. She now appeals that order and contends that (1) there is no

statutory authority permitting the mayor of the City to authorize purchases and to contract for labor and materials up to $5,000, and (2) health insurance premiums were illegally paid on behalf of the City's waste water operator, and he should be required to refund that money to the City. We agree on both points and reverse the circuit court's order.

On June 22, 1998, Burke filed suit, alleging that certain actions taken by the City amounted to an illegal exaction. One of her allegations concerned an ordinance passed by the city council on June 9, 1986. According to the complaint, this ordinance was based on Ark. Code Ann. § 14-58-303 (Repl. 1998), which provides that cities of the first class may enact an ordinance delegating to the mayor the authority to make purchases and contract for labor and materials when the amount involved is less than $10,000 without prior consultation with the city council.[1] Burke asserted in her complaint that because Huntington is a city of the second class, the delegation of authority to the mayor pursuant to § 14-58-303 was unauthorized and illegal.

A second allegation in the complaint concerned the payment of health insurance premiums for Arnold Elmore, the waste water operator. On December 11, 1990, the city council approved the payment of this insurance for the mayor, the recorder, and the public works director. At the time of this approval, the public works director was Kennith Elmore,[2] who was also the waste water operator. When Kennith Elmore assumed the position of mayor, Craig Cotner was hired as the public works director, and Arnold Elmore was hired as the waster water operator. However, the city council never approved payment of health insurance benefits for the waste water operator, Arnold Elmore. In light of this, Burke alleged in her complaint that Arnold Elmore should repay the health insurance premiums. She also alleged wrongful payment of continuing education expenses and cellular phone bills, but these matters are not issues in this appeal.

Burke prayed for a declaratory judgment finding that City Ordinance 86-6 violated § 14-58-303 in that that statute did not

---

[1] At the time the Huntington ordinance was enacted, § 14-58-303 had a $5,000 limitation. The limit was raised to $10,000 by Act 812 of 1995.

[2] At various times, the name of the appellee, Kennith Elmore, appears as Kenneth Elmore in the record.

include cities of the second class and, further, that the health insurance premiums were wrongfully paid. The circuit court, following a bench trial, found in its order that because the ordinance was passed to enable the City to perform essential and indispensable functions incidental to the operation of the municipality and the administration of local affairs, it did not violate Arkansas law. The circuit court also found that the City wrongfully paid insurance premiums for the benefit of Arnold Elmore in the amount of $5,280, but because Elmore was not guilty of fraud or misrepresentation, it would be inequitable to require him to repay the amount when he had rendered services to the City in good faith. Accordingly, the circuit court declined to order Elmore to refund the premiums paid on his behalf to the City.

### I. Mayor's Authority to Purchase and to Contract

Burke first contends on appeal that there is no statutory authority that allows cities of the second class to pass an ordinance authorizing their mayors to make purchases up to $5,000 or to contract for labor and materials up to the same amount. She points out that while this court has held on occasion that cities of the second class are by implication deemed to be included in statutes made specifically applicable to the cities of the first class, this implied authority is not applicable here where the power involved is merely for convenience and is not indispensable. The appellees counter that this authority for the mayor is essential for the efficient operation of the City and that constant consultation with the city council would impede day-to-day purchases and contracts made on the City's behalf.

The pivotal issue in this case is whether the City had the authority to enact Ordinance 86-6. As already noted, the circuit court found that Ordinance 86-6 was passed to enable the City to perform essential and indispensable functions incidental to the operation of the City. Our standard of review of a circuit court's finding following a bench trial is whether that finding was clearly erroneous. *City of Pocahontas v. Huddleston*, 309 Ark. 353, 831 S.W.2d 138 (1992).

This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed

upon them by statute or by the Arkansas Constitution. *Jones v. American Home Life Ins. Co.*, 293 Ark. 330, 738 S.W.2d 387 (1987). *See also City of Ft. Smith v. O.K. Foods, Inc.*, 293 Ark. 379, 738 S.W.2d 96 (1987); *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. *City of Little Rock v. Cash, supra.* Recently, this court summarized what powers can be exercised by a municipality:

> Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.

*Cosgrove v. City of West Memphis*, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).

The statute from which the City purports to get its power is § 14-58-303. The relevant portions of that statute read:

> (a) In a city of the *first class*, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.

> (b)(1) The municipal governing body shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of ten thousand dollars ($10,000).

Ark. Code Ann. § 14-58-303(a) & (b)(1)(Repl. 1998) (emphasis added).

■ By the clear terms of the statute, it only applies to cities of the first class. Thus, the first category for establishing a municipality's power under *Cosgrove v. City of West Memphis, supra,* that is, an express grant of the authority, is inapposite to the instant case. We further conclude that the second and third categories for establishing a city's authority under *Cosgrove* have not been met.

The circuit court based its finding that the mayor's power was either incidental to an express power or indispensable on two cases and cited *Conner v. Burnett*, 216 Ark. 559, 226 S.W.2d 984 (1950), and *Weeks v. Texarkana*, 50 Ark. 81, 6 S.W. 504 (1887). Neither of these cases, however, is controlling. In *Weeks v. Texarkana, supra,* this court held that even though the statute at issue did not expressly authorize the council of an incorporated town to compensate its recorder, because "onerous duties are devolved upon him, requiring time and labor for their performance, such power may be fairly inferred as essential to the purposes of the incorporation. Otherwise the efficiency of the municipal government might be crippled and the best interests of the town suffer, from the impossibility of procuring a competent man, who would give his services gratuitously" *Id.* at 83, 6 S.W. at 505. We held, in essence, that compensation of a recorder was indispensable to the efficient administration of city government.

In *Conner v. Burnett, supra,* the plaintiff filed suit, claiming that a city of the second class was not authorized to vary or increase the compensation for a marshal fixed by statute. The statute at issue stated that the marshal of a city of the second class "shall receive like fees as sheriffs and constables in similar cases." *Id.* at 560, 226 S.W.2d at 984 (citing Ark. Stat. Ann. § 19-1104). This court held that the General Assembly intended to and did authorize cities of the second class to pay their marshals a salary and cited the statute that gave cities of the first class power to fix salaries for their municipal officers. We noted that though this same power was not expressly given to cities of the second class, this court had held that "the statute does by implication delegate that power to these smaller municipalities." *Id.* (citing *Weeks v. Texarkana, supra.*) Moreover, we note that the increased salary for increased duties was ancillary to the statutory authority setting the marshal's compensation in the same range as that of sheriffs and constables for like cases.

We turn then to the case at hand. We observe initially that there is a problem in this court's simply expanding the scope of § 14-58-303 to second-class cities. If the General Assembly had intended to include cities of the second class, it easily could have done so. There are many instances in the code where the General Assembly has made statutes specifically applicable to both cities of the first and second classes. *See generally* Ark. Code Ann. §§ 14-234-302 (Repl. 1998) (power to create commission to operate water-

works); 14-262-105 (Repl. 1998) (power to make expenditures for public health); 14-269-201 (Repl. 1998) (power to create recreation commission); 14-301-109 (1987) (power to compel railroad to provide public foot-walk over railroad tracks). Thus, unless Ordinance 86-6 falls within the parameters of the remaining two categories of *Cosgrove*, the clear language of § 14-58-303 should control.

■ We find no basis for concluding that the purchasing and contracting power in the City's mayor under Ordinance 86-6 is authority that is incidental to an express power. The remaining issue then is whether the mayor's purchasing authority can be deemed to be essential or indispensable as opposed to merely convenient. The trial court relied on the testimony of appellee Vicki Strange, the recorder/treasurer for the city, in determining that it would be inefficient and unnecessary to go through the city council for insignificant matters. Ms. Strange testified at one point: "We have, say for example, a generator or whatever breakdown at the waste water plant and it is going to cost $3300.00, and we have this waste water running all over town. Yeah, we need something like this so we can immediately repair that and not endanger the citizens."

■■ This was the only testimony regarding the necessity for Ordinance 86-6. There was nothing in the record about how often the city council meets in Huntington or how cumbersome it would be to call city council meetings. Simply because a witness testifies that it is inefficient and unnecessary to go through the city council for purchasing matters does not mean the purchasing and contracting power in the mayor is essential to the operation of the City. Moreover, it is difficult for us to see why the city council should not be summoned into session for emergency situations such as those described by Ms. Strange. It stands to reason that, as a practical matter, the mayor's purchasing and contracting authority at issue in this case is used more for mundane matters and as a matter of convenience than for purchasing equipment or contracting for labor and materials in times of crisis. Powers assumed by a city merely for convenience do not qualify as indispensable or implied powers. *See Arkansas Utilities Co. v. City of Paragould*, 200 Ark. 1051, 143 S.W.2d 11 (1940). As such, it does not meet the criteria for an essential or indispensable power.

We reverse the circuit court on this point.

## II. Health Insurance Benefits

For her second point, Burke urges that the circuit court erred in finding that because Arnold Elmore acted in good faith, he should not be required to refund the amounts paid on his behalf by the mayor for his health insurance premiums. Burke directs this court's attention to *Massongill v. County of Scott*, 337 Ark. 281, 991 S.W.2d 105 (1999), where we held that even though the quorum court had acted in good faith in using county funds to pay their own health insurance premiums, those amounts paid had to be refunded to the county because they were not authorized by then existing state law. The appellees respond that the circuit court did not err in its finding on this point, because Elmore had indeed rendered services to the City in good faith. They further point out that like the other City officials who received health insurance benefits as part of their compensation packages pursuant to city council approval, Elmore, as the waste water operator, provided essential and similar services to the City. The City distinguishes the *Massongill* case by emphasizing that here the mayor authorized Elmore to receive insurance benefits and Elmore was not a part of that decision, whereas in *Massongill* the quorum court members voted to provide themselves with health insurance benefits.

The circuit court did find in the instant case that the insurance premiums paid on behalf of Arnold Elmore were unauthorized by city ordinance and thus were illegal. However, the circuit court specifically found that Elmore did not need to refund the sums because he "was not guilty of fraud or misrepresentation, but was the beneficiary of what the City thought was a justified payment." The court added that it would be unjust and inequitable to require repayment when Elmore had rendered services to the City in good faith.

In *Massongill v. County of Scott, supra,* this court did deal with a similar issue. The quorum court had enacted an ordinance providing for payment of their insurance premiums, and we held that the quorum court members were recipients of benefits that were unlawfully paid, and as such, the members were required to refund the money unlawfully paid. We said:

> This case is not about the good faith of the quorum members. We do not question whether they acted in good faith in passing the

ordinance at issue or in accepting the benefits received by the county. The simple fact is that monies were paid for insurance premiums to their benefit in accordance with City Ordinances 96-3 and 95-3 which were not authorized by the then existing state law. Our Constitution gives the people the right to seek recovery of such monies. . . . Recovery is permitted from the quorum court members not as a result of their legislative actions but because they were the recipients of benefits found to be unlawfully paid. No action would be against them personally had they received no personal benefit from expenditure of county funds.

*Id.* at 286, 991 S.W.2d at 108.

 The City is right that the facts here are different in that Elmore, unlike the quorum court, had no role in the decision to provide him health insurance benefits as part of his compensation package. However, the fact remains that those benefits were not authorized by ordinance and were therefore improper and illegal.[3] Additionally, in *Massongill*, this court required repayment of the funds received by the quorum court members, not because they enacted the ordinance granting the benefits, but because they were recipients of benefits found to be unauthorized. We were absolutely clear that good faith does not matter in such an instance. What matters is whether the benefits were unlawfully paid.

We conclude that the insurance premiums paid on behalf of Arnold Elmore were unlawfully paid by the mayor without city council approval. As was the case in *Massongill*, the premium amounts must be refunded to the City.

We reverse the circuit court and remand the matter for further proceedings as required by this opinion.

---

[3] This situation is different from that in *Biedenharn v. Hogue*, 338 Ark. 660, 1 S.W.3d 424 (1999), where the compensation received by Hogue was authorized by law and, hence, was not illegal.