The Honorable Andrew Morris State Representative 2503 Eidson Street Springdale, AR 72762-6610
Dear Representative Morris:
This is in response to your request for an opinion on several questions concerning the payment of health insurance premiums for auxiliary police officers by the City of Johnson, Arkansas. You state that the City began providing the health insurance beginning in 1985, and ceased the practice in 1996. You also state that when the payments began, there was no ordinance giving the Mayor authority to spend city funds. Additionally, according to your correspondence, there is no ordinance or written resolution authorizing the expenditures, however, the Council routinely reviewed bills prior to payment. You state furthermore that the minutes of the monthly Council meetings for the time when the payments began have not been located.
You have asked the followed questions in this regard, which you indicate have arisen in light of the recent case of Burke v. Elmore,341 Ark. 129, ___ S.W.2d ___ (April 20, 2000):
 1. Were the payments for auxiliary police officers' insurance premiums unlawful?
 2. If unlawful payments were made, is the City required to seek recovery of the funds, or merely permitted to seek recovery of the funds?
 3. If the payments were unlawful when made, can the current Council ratify or confirm the payments previously made to correct the situation?
 4. If the payments were unlawful, are there applicable statutes of limitation or restrictions on how far back in time the City can go in seeking payment?
RESPONSE
I cannot provide a conclusive opinion as to the legality of the payments because, as discussed below, this will ultimately require a factual determination. I lack both the resources and the authority to act as a factfinder in resolving issues such as this. I will, however, provide my opinion as to the principal elements of the legal analysis to employ in addressing these questions.
To summarize that analysis: Question 1: The health insurance payments were "unlawful" if they were never legally authorized by the City Council. The absence of an ordinance or resolution in this regard may not be conclusive if there are other records reflecting the City's agreement to make the payments, or if there is evidence that records reflecting the Council's authorization were either lost or destroyed. Question 2: If, in fact, the City Council never authorized the health insurance benefits and the payments were thus unlawful, then either the City or a taxpayer may seek recovery of the funds. The officers may, however, have a valid claim for the funds under the theory of either quantum meruit or unjust enrichment. Question 3: The City Council can, in all likelihood, ratify the payments in this instance. Question 4: The three-year statute of limitations under A.C.A. § 16-56-105 (1987) will likely apply in a case such as this, in the absence of fraud, corruption, or willful diversion.
Question 1 — Were the payments for auxiliary police officers' insurancepremiums unlawful?
In my opinion, the answer to this question will depend upon whether the City Council, as a body, ever authorized the health insurance payments. The payment of compensation and other allowances to auxiliary law enforcement officers[1] is specifically authorized under A.C.A. §12-9-307 as follows:
 An auxiliary law enforcement officer may receive such compensation, per diem, expenses, or other allowances for his services, for such purposes as transporting juveniles, as may be agreed to by the appointing authority.
A.C.A. § 12-9-307(d) (Repl. 1999).
It is my opinion that health insurance benefits would generally be deemed to fall within this statutory authorization as "compensation" or as some "other allowance." Cf. Op. Att'y Gen. 97-108 (noting that this office has previously commented that health insurance benefits would likely be considered compensation). The question, therefore, is whether the City Council, as the governing body of the "appointing authority," agreed to provide the health insurance benefits. I am uncertain what the City's position is on this issue. You have indicated that there is no ordinance or written resolution authorizing the expenditures; but your statement that the Council routinely reviewed bills prior to payment suggests that the payments may have been approved. Is it the City's position that the minutes of the monthly meetings, if located, would reflect the Council's agreement to make the payments? Although parole, i.e., oral testimony will probably not be sufficient to prove the agreement (see generallyCity of El Dorado v. Faulkner, 107 Ark. 455 (1913)), testimony that a record of the agreement has been lost or destroyed may be admissible.Id.
The City Council's authorization of the payments could thus possibly be reflected in some record(s) other than a specific ordinance or resolution.[2] Local counsel should be consulted regarding the existence of any such record. This of course presents a question of fact that cannot be resolved in the limited format of an opinion from this office.
Question 2 — If unlawful payments were made, is the City required to seekrecovery of the funds, or merely permitted to seek recovery of thefunds?
There is no explicit requirement that a city seek the recovery of unlawfully paid city funds.
At this point let me emphasize that I believe the auxiliary law enforcement officers may well have a valid claim for the health insurance payments, even in the absence of City Council authorization. This observation is premised upon the assumption that the health insurance benefits are authorized by state law. See A.C.A. § 12-9-307 (discussed above). In my opinion, this distinguishes the situation at hand from that facing the court in Burke v. Elmore, supra, which you have cited as the impetus for your questions. In Burke, the court ordered the refunding of health insurance benefits that were determined to be illegal. The payments were paid by a city of the second class for a wastewater operator based on a city ordinance authorizing the mayor to make purchases up to $5,000. The ordinance was passed based on A.C.A. § 14-58-303 (Repl. 1998) (currently setting a $10,000 limit). The court rejected the city's reliance upon § 14-58-303, holding that this Code section only applies to cities of the first class. 341 Ark. at 133. The court also rejected the argument that the mayor's purchasing power was either incidental to an express power or indispensable to the operation of the city. Id. at 134-135. The city thus had no authority to enact the ordinance giving the mayor the purchasing power, and that ordinance provided the only legal basis for the purchase. There was no city council ordinance authorizing the payment, and the benefits were not authorized by state law. Id. at 137, n. 3.
The court in Burke thus determined that the insurance premium payments were illegal and it ordered a refund. In ordering the refund, the court rejected an argument based upon the "good faith" of the recipient of the health insurance benefits. The city's effort to distinguish the similar case of Massongill v. County of Scott, 337 Ark. 281, 991 S.W.2d 105
(1999) was unsuccessful because, according to the court in Burke, the fact remained that the benefits were unauthorized. 341 Ark. at 137. InMassongill, the payments had to be refunded because they "were not authorized by the then existing state law." Id. quoting Massongill. The insurance premiums in Burke were "unlawfully paid by the mayor without city council approval." Id.
In my opinion, the absence of any authority for the benefits distinguishes these cases from the instant case. The refund inMassongill clearly followed from the fact that state law did not authorize the health insurance benefits for the quorum court members. A close reading of Burke reveals that, similarly, there was no legal basis for the insurance payments on behalf of the wastewater operator. The ordinance delegating purchasing power to the mayor failed, the city council never authorized the payments, and the benefits were not authorized by state law. 341 Ark. at 137, n. 3 (noting that the benefits for the wastewater operator were not authorized by ordinance, and distinguishing the case of Biedenharn v. Hogue, 338 Ark. 660,1 S.W.2d 424 (1999) "where the compensation received by Hogue was authorized by law and, hence, was not illegal.") Had there been a state law authorizing the insurance payments at issue in Burke, I believe the court would have entertained the "good faith" argument against a refund, that is, the argument that "it would be unjust and inequitable to require repayment when [the recipient of the benefits] had rendered services to the City in good faith." 341 Ark. at 136.
The existence of a state law authorizing the health insurance payments for auxiliary police officers thus compels me to conclude that Burke is inapposite under the facts at hand, and that the officers might succeed in claiming the payments under the theory that this form of compensation was earned and paid in good faith. See also generally Gladson v. Wilson,196 Ark. 996, 120 S.W.2d 732 (1938) (theory of "quantum meruit" entitling one to the value of services provided).
Question 3 — If the payments were unlawful when made, can the currentCouncil ratify or confirm the payments previously made to correct thesituation?
It is my opinion that the answer to this question is in all likelihood "yes." A city may ratify the unauthorized acts of its agents or officers if those acts are within the corporate powers. See, e.g., Lykes v. Cityof Texarkana, 223 Ark. 287, 265 S.W.2d 539 (1954), citing Texarkana v.Friedell, 82 Ark. 531, 102 S.W. 374 (1907); Day v. City of Malvern,195 Ark. 804, 114 S.W.2d 459 (1938). As discussed above, the City is authorized by state law in this instance to provide compensation or other allowances to auxiliary law enforcement officers. A.C.A. § 12-9-307.
Question 4 — If the payments were unlawful, are there applicable statutesof limitation or restrictions on how far back in time the City can go inseeking payment?
It is my opinion that the three year statute of limitations likely applies here. See A.C.A. § 16-56-105(1) (1987). As stated in State, Useand Benefit of Garland County, v. Jones, 198 Ark. 756, 762,131 S.W.2d 612 (1939):
 [A]n action to recover money paid or obtained through an honest mistake of fact or law, in the absence of fraud, corruption, or willful diversion, is an action founded upon an implied contract or liability, not in writing, and must be commenced within three years. Richardson v. Bales, 66 Ark. 452, 51 S.W. 321; Clarke v. School District No. 16, et al., 84 Ark. 516, 106 S.W. 677; Board of Education of Ouachita County, et al. v. Morgan, et al, 182 Ark. 1110, 34 S.W.2d 1063. And compare, Sims v. Craig, County Treasurer, et al., 171 Ark. 492, 286 S.W. 867; Core, et al. v. McWilliams Co., Inc., 175 Ark. 112, 298 S.W. 879.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] You have provided no information regarding the employment or appointment of the "auxiliary police officers" in question. I assume, however, that they were appointed in accordance with subchapter 3 of Title 12 of the Arkansas Code, which provides for the appointment of a restricted number of "auxiliary law enforcement officers" by a political subdivision. See A.C.A. § 12-9-306 (Repl. 1999). An "auxiliary law enforcement officer" is defined as "a person who meets the minimum standards and training requirements prescribed for such officers by law and regulations, and who is appointed by a political subdivision or a law enforcement agency as a reserve officer, volunteer officer, or mounted patrol, but does not include any officer or deputy sheriff employed by a planned community property owners' association[.]" A.C.A. § 12-9-301(2) (Repl. 1999).
[2] The possibility that this item was included in the general City budget should also be considered. In accordance with A.C.A. § 14-58-203
(Repl. 1998), the City Council's approval of the budget "shall, for the purposes of the budget from time to time amount to an appropriation of funds which are lawfully applicable to the items therein contained." The general ordinance approving the budget could thus reflect the Council's authorization of the health insurance benefits.