The Honorable Roger Smith State Representative 13 South Pego Way Hot Springs, AR 71909-2828
Dear Representative Smith:
I am writing in response to your request for my opinion on the following questions, which you submit on behalf of an alderman of the City of Glenwood:
 1. In light of A.C.A. 14-58-303, giving the mayor the exclusive power to enter into contracts, what is the effect of a mayor's refusal to sign a contract for a purchase or other purpose governed by that statute? In other words, may the mayor prevent the city from entering a contract approved by the council for which the funds have been validly appropriated by his refusal to sign it?
 2. If the mayor refuses to sign the contract, may the recorder of a second class city or incorporated town sign the contract pursuant to A.C.A. 14-42-111?
 3. Does A.C.A. 14-43-502, which gives the council control of the city finances, allow the council members to sign the contract or appoint some other person to do so; or does the statute or any other provision of law provide that any person may sign the contract on behalf of the city?
Given that this request apparently relates to an issue in Glenwood, I will focus my response on principles applicable to cities of the second class.
RESPONSE
In response to your first question, given that the mayor has "exclusive power" to contract on behalf of a city, A.C.A. § 14-58-303, I believe he has sole control over which contracts to enter, regardless of what appropriations the city council might have made. With respect to your second question, I do not believe A.C.A. § 14-42-111 authorizes the recorder to execute a contract the mayor refuses to sign, since the referenced statute authorizes the recorder to do so only if the mayor is incapacitated or absent. With respect to your third question, I believe that neither A.C.A. § 14-43-502 nor any other provision of state law empowers the city council, its designees or any other person other than the mayor or his designee to execute contracts on behalf of the city. The power to control finances through the power of appropriation does not necessarily carry with it a power to determine what contracts the city will execute. Section 14-58-303 unequivocally locates the latter power in the mayor or his designee.
Question 1: In light of A.C.A. 14-58-303, giving the mayor the exclusivepower to enter into contracts, what is the effect of a mayor's refusal tosign a contract for a purchase or other purpose governed by that statute?In other words, may the mayor prevent the city from entering a contractapproved by the council for which the funds have been validly appropriatedby his refusal to sign it?
Section 14-58-303 of the Arkansas Code (Supp. 2001), as amended by Act 508 of 2001, provides:
 (a) In a city of the first class, city of the second class or incorporated town, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
 (b)(1) The municipal governing body of any city of the first class shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of ten thousand dollars ($10,000). The municipal governing body of any city of the second class or incorporated town may provide, by ordinance, the procedure for making all purchases.
 (2)(A)(i) In a city of the first class, where the amount of expenditure for any purpose or contract exceeds the sum of ten thousand dollars ($10,000), the mayor or his duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
 (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or his duly authorized representative.
 (iii) The mayor or his duly authorized representative shall have exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.
 (B) The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.
As you acknowledge in your question, this statute invests the mayor or his authorized representative with the "exclusive power . . . to make all necessary contracts" relating to municipal affairs. Subsection (b)(1) authorizes the municipality's governing body to "provide, by ordinance, the procedure for making all purchases."
As noted in Southwestern Bell Mobile v. Arkansas Public ServiceCommission, 73 Ark. App. 222, 228, 40 S.W.3d 838 (2001):
 The basic rule of statutory construction is to give effect to the intent of the legislature. Central Southern Companies, Inc. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999). When the language of a statute is plain and unambiguous, legislative intent is determined from the ordinary meaning of the language used. Id. In considering the meaning of a statute it is construed just as it reads, giving words their ordinary and usually accepted meaning in common language. Id.
(Footnote omitted.) Applying this principle, I believe the directive in A.C.A. § 14-58-303(a) that "the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all . . . things requisite for public purposes in and for the city and to make all necessary contracts . . . for the benefit of the city, or in carrying out any work or undertaking of a public nature therein" allows of only one conclusion: subject to the conditions set forth in A.C.A. § 14-58-303(b), only the mayor or his designee, not the city council, has the authority to contract on behalf of the city. To be sure, among the conditions placed on this authority is the statutory grant to the city council of the discretionary power to "provide, by ordinance, the procedure for making all purchases." A.C.A. §14-58-303(b)(1). However, I do not believe this legislative power to dictate procedure could justify a council's attempt to direct the mayor to execute a particular contract. I offer this opinion notwithstanding the fact that the city council has reportedly appropriated funds to finance the contract — an action clearly authorized pursuant to the legislature's grant of the appropriation power at A.C.A. § 14-55-205
(Repl. 1998). See also A.C.A. § 14-43-502(b) (investing a city council with "management and control of finances"); Ark. Op. Att'y Gen. No.96-328 (opining that this statute applies to both cities of the first and second class). However, the power to finance is logically distinct from the power to contract. In my opinion, in enacting A.C.A. § 14-58-303(a), the legislature has unequivocally located the latter power solely in the mayor or his designee.
Having offered this opinion, I should note that the Arkansas Supreme Court, in dictum, has paraphrased of A.C.A. § 14-58-303 as "provid[ing] that cities of the first class may enact an ordinance delegating to the mayor the authority to make purchases and contract for labor and materials when the amount involved is less than $10,000 without prior consultation with the city council."[1] Burke v. Elmore, 341 Ark. 129,131, 14 S.W.3d 872 (2000). This pronouncement appears to suggest that the power to contract on behalf of the city lies in the first instance with the city council, which may delegate this power to the mayor and, presumably, reclaim it if dissatisfied with the mayor's performance.
In my opinion, if directly faced with the issue, the Supreme Court would almost certainly reject this interpretation of the statute, which on its face locates the power to contract squarely in the mayor. In Burke, the plaintiff challenged an ordinance in a city of the second class purporting to delegate to the mayor the city council's power to contract. Id. at 131. In upholding this challenge, the court noted that the statute as then written applied only to cities of the first class. Id. at 133. Given what I consider the clarity of A.C.A. § 14-58-303, I strongly suspect that the court's reference to "delegating" in its paraphrase is merely an unfortunate reflection of the fact that the case before it involved a purported delegation: at issue was the legality of an ordinance purporting to delegate to the mayor the city council's then undisputed power to contract on the city's behalf. As I discussed in some detail in the attached Ark. Op. Att'y Gen. No. 2001-156, by including cities of the second class and incorporated towns within the scope of A.C.A. §14-58-303 — a move it apparently made in reaction to the court's ruling in Burke — the legislature did not authorize a delegation of the city council's power to contract, but rather transferred this power in such municipalities from the governing body to the mayor. Notwithstanding its troubling dictum, which appears to have been prompted primarily by the facts of the particular case before it, I believe the supreme court would agree that the General Assembly's grant of an "exclusive power" to the mayor rules out any delegation of that same power by a city council.
Accordingly, I believe a mayor may indeed "prevent the city from entering a contract approved by the council for which the funds have been validly appropriated." In my opinion, although the council is clearly authorized to appropriate funds for a legitimate municipal purpose, it is barred by A.C.A. § 14-58-303 from dictating that the mayor execute any particular contract in order to realize that purpose. This conclusion is in all respects consistent with one drawn by my immediate predecessor in Ark. Op. Att'y Gen. No. 93-332:
 It does not appear, in light of these statutes, that the city council has the authority to require prior council approval of "purchases" made by the mayor. The relevant statute gives the mayor the "exclusive authority" to make purchases on behalf of a city. . . . [I]t does not appear that the council has any authority over these purchases, as long as the purchase is from previously appropriated funds. The council does have the authority to establish the procedure for making purchases. . . . This procedure, in my opinion, however, cannot obliterate the mayor's statutory authority to make purchases.
My predecessor further implied, and I concur, that a mayor's power to contract on behalf of the city would remain exclusive to him or his designee even if the city council, pursuant to its power to regulate "the procedure for making all purchases," A.C.A. § 14-58-303(b), assigned check-writing authority to some other individual. In my opinion, the authorized individual in such a situation would be obligated to write the checks in accordance with the mayor's directive. Moreover, although my predecessor found no constitutional or statutory proscription against a city council's enacting line-item appropriations, he appears clearly to have recognized, and I agree, that any such line-item appropriation would be merely an authorization to expend funds in contracting for a particular purpose, not a directive that the mayor either expend the entire appropriation or exercise his "exclusive power" to contract in pursuit of that purpose in any particular fashion. See Ark. Const. art. 5, § 29 (directing that an appropriation shall specify "the maximum amount which may be drawn"); Ark. State Highway Comm. v. Mabry,229 Ark. 261, 266-67, 315 S.W.2d 900 (1958) ("Clearly Act 3 above was an appropriation act only, fixing maximum amounts to be expended by the Highway Department for salaries of employees, for payments for highway bridges, ferries, etc., and was not a requirement or mandate to spend specific amounts."); Ark. Op. Att'y Gen. No. 93-104 (noting that an appropriation bill defines the maximum amount authorized to be spent on a given project).
Finally, depending upon the particular circumstances, it is conceivable that a mayor's refusal to execute a contract might amount to "nonfeasance in office" as defined at A.C.A. § 14-42-109(a)(1)(A) (Repl. 1998), which provides:
 If the mayor or police judge, member of the city council, or any other elective officer of any city of the first class or second class or incorporated town in this state shall willfully and knowingly fail, refuse, or neglect to execute, or cause to be executed, any of the laws or ordinances within their jurisdiction, they shall be deemed guilty of nonfeasance in office.
Subsections 14-42-109(a)(1)(B)(i) and (ii) of the Code provide that, upon indictment, the circuit court will hear the charges and, if it determines that the challenged conduct constitutes nonfeasance, remove the mayor from office. As this office acknowledged in Ark. Ops. Att'y Gen. Nos.95-187 and 91-024, the requirement of obtaining an indictment renders any such proceeding criminal, rather than civil, in character, although the only penalty for conviction is removal from office. Upon removal, the governor is charged with appointing a replacement to fill the vacancy until a successor is elected at the next general election. A.C.A. §14-42-109(b)(2)(B).
Question 2: If the mayor refuses to sign the contract, may the recorderof a second class city or incorporated town sign the contract pursuant toA.C.A. 14-42-111?
In my opinion, the answer to this question is "no."
Section 14-42-111 of the Code (Repl. 1998) provides:
 Whenever the mayor of an incorporated town or city of the second class is unable to perform the functions of his office, or is absent and cannot be obtained, the recorder of the town or city shall be authorized and empowered to perform the functions of a magistrate during the disability or absence of the mayor, with all the power and jurisdiction of the mayor, to all intents and purposes whatever.
On its face, this statute applies only if a mayor is incapacitated or absent, not when his conduct as mayor offends the city council. See,e.g., Ark. Op. Att'y Gen. No. 96-092 (addressing the application of this statute in a city whose mayor had suffered a disabling stroke).
Question 3: Does A.C.A. 14-43-502, which gives the council control of thecity finances, allow the council members to sign the contract or appointsome other person to do so; or does the statute or any other provision oflaw provide that any person may sign the contract on behalf of the city?
As noted in my response to your first question, my immediate predecessor opined in Ark. Op. Att'y Gen. No. 96-328 that A.C.A. § 14-43-502(b), which invests a city council with "management and control of finances," applies to both cities of the first and second class. However, as I observed above, the power to control finances by appropriating available revenues does not necessarily carry with it the power to contract on behalf of the city. In my opinion, A.C.A. § 14-58-303 makes it absolutely clear that only the mayor or his designee wields the power to contract on behalf of a city of the second class.
I am unaware of any provision of law that in any sense qualifies the clear meaning of A.C.A. § 14-58-303. Accordingly, I do not believe either the council members, any council designee or any person other than the mayor or his designee could qualify to enter into the contract at issue in your request. See Ark. Ops. Att'y Gen. Nos. 2001-156 ("[N]othing in the Code suggests that a recorder/treasurer of a city of the second class might be charged with independently negotiating a city contract."); 93-332 (ordinance purporting to require comptroller's signature on purchase documents "cannot operate to take away the mayor's `exclusive authority' to make purchases under A.C.A. 14-58-303").
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] The court made this pronouncement before the legislature adopted Act 508 of 2001, which extended the scope of the statute to cities of the second class and incorporated towns.