The Honorable Steven B. Jones State Representative P.O. Box 3040 West Memphis, AR 72303-3040
Dear Representative Jones:
I am writing in response to your request for my opinion on the following question:
 Can a city/municipality enact an ordinance outlawing radar detectors, even when there is no current state law?
RESPONSE
Although I have found no authority directly addressing this issue, I believe the answer to your question is probably "no."
As the Arkansas Supreme Court noted in Burke v. Elmore, 341 Ark. 129,131, 14 S.W.3d 172 (2000):
 Municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 133, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. City of Little Rock v. Cash, supra. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
At issue, then, is whether the legislature has bestowed upon cities either expressly or by necessary implication the power to impose a traffic regulation that the legislature itself has apparently elected not to impose on a statewide level.
Before addressing the precise scope of the authority the legislature has granted municipalities, I should note that I have been unable to locate a single case in any jurisdiction challenging the validity of a local
ordinance banning the use of radar detectors. To date, the radar-detector debate has been restricted to the propriety or desirability of state
statutes banning the use of such devices,[1] see Thomas R. Trenker,Possession or Operation of Device for Detecting or Avoiding Traffic Radaras Criminal Offense, 17 A.L.R.4th 1334 (1982 Supp. 1999), and cases recited therein, as well as the constitutionality of a federal regulation, set forth at 49 C.F.R. § 329.71 (2001), banning the use of radar detectors in commercial vehicles, see Association on DefendingAirwave Rights, Inc. v. United States Department of Transportation,47 F.3d 794, 809 (6th Cir. 1995) (holding it constitutional to ban such devices in commercial, but not personal, vehicles).[2] Given the apparently complete absence of case law addressing local legislation on this issue, I suspect no such legislation exists, municipalities having apparently concluded that such regulation lies beyond the scope of their police power.
Under Arkansas law, the scope of municipal police powers is set forth at A.C.A. § 14-55-102, which provides:
 Municipal corporations shall have power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.
Specifically with respect to traffic regulation, A.C.A. § 27-49-106
further provides in pertinent part:
 (a)(1) No local authority shall enact or enforce any rule or regulation in conflict with the provisions of this subtitle unless expressly authorized in this subtitle.
 (2) Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this subtitle.
* * *
 (b) The provisions of this subtitle shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:
 (1) Regulating the standing or parking of vehicles, including the ability to establish districts for the purpose of limiting the time, place, and manner of public parking in designated areas;
 (2) Regulating traffic by means of police officers or traffic control signals;
 (3) Regulating or prohibiting processions or assemblages on the highways;
 (4) Designating particular highways as one-way highways and requiring that all vehicles thereon be moved in one specific direction;
(5) Regulating the speed of vehicles in public parks;
 (6) Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing it or designating any intersection as a stop intersection and requiring all vehicles to stop at one (1) or more entrances to the intersection;
 (7) Restricting the use of highways as authorized in §§ 27-35-101—27-35-111; and
 (8) Regulating or prohibiting the traffic from and use of mopeds, three-wheeled vehicles, and other similar vehicles.
 (c) No ordinance or regulation enacted under subdivision (b)(1), (4), (5), (6), or (7) of this section shall be effective until signs giving notice of local traffic regulations are posted upon or at the entrances to the highways or parts affected, as may be most appropriate.
 (d) No provision of this subtitle, of other state traffic laws, or of any local traffic ordinance or regulation enacted under authority of subdivision (a)(3) of this section shall be effective on a private roadway of a planned community until signs giving notice of the owner's grant of permission to enforce those state and local traffic regulations are posted upon or at the entrances to the planned community's private roadways or affected parts thereof.
Section 14-43-601 of the Code further provides in pertinent part:
 (a)(1) [T]he term "municipal affairs" means all matters and affairs of government germane to, affecting, or concerning the municipality or its government, except the following, which are state affairs and subject to the general laws of the State of Arkansas:
* * *
(J) Matters coming within the police power of the state . . .;
* * *
(L) Traffic on or the construction and maintenance of state highways;
* * *
 (2) The municipality may exercise any function or legislative power upon the foregoing state affairs not in conflict with state law.
As the foregoing statute reflects, cities may not impose any traffic regulation on state highways that conflicts with state law — a condition that would appear to foreclose any ban on the use of radar detectors on state highways located within city limits. The only remaining question, then, is whether a city might ban the use of such devices in vehicles operated on its own streets. Stated differently, the question is whether the regulation of radar detectors falls exclusively within the state's police powers or whether the general grant of supplementary police power to municipalities set forth at A.C.A. § 14-55-102 might authorize a city independently to ban the use of detectors on its streets.
Although I have been unable to locate any authority directly on point, I believe the absence of precedent on this issue in itself confirms that such regulation does not fall within the scope of local police power. This conclusion is reinforced by the stringent restrictions on municipal authority described in Burke, supra. Moreover, the representative list of police-power functions a municipality might undertake in regulating traffic, see A.C.A. § 27-49-106, contains nothing to suggest that the legislature intended to invest in local government the power to legislate on a matter elsewhere recognized as appropriately addressed only at the state level. Given this conclusion, I need not even discuss the major constitutional issue of inadequate notice that would arise if a small municipality were to declare illegal within city limits a practice permitted throughout the rest of the state.
In offering this opinion, I am not ignoring the fact that the Code is silent on the issue of radar detectors, thus arguably leaving municipalities free to address the issue pursuant to A.C.A. §§ 14-43-601
and 27-49-106, which empower cities to enact ordinances in pursuit of their police power so long as the legislation does not conflict with state law. I believe legislative silence in this instance is tantamount to toleration, if not outright approval, of these devices, whose widespread use both the law enforcement community and the legislature doubtless recognizes. Legislative experience throughout the nation suggests that the question of whether to ban the use of radar detectors in private vehicles should be left to state legislatures, and I have no reason to believe that the Arkansas General Assembly intended to cede this authority to the cities.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] In Association on Defending Airwave Rights, Inc. v. United StatesDepartment of Transportation, 47 F.3d 794, 798 n. 3 (6th Cir. 1995), the court noted that three states that had considered the issue had banned the use of radar detectors, whereas forty had expressly declined to do so.
With respect to local ordinances, I should mention that a District of Columbia law banning the sale, use or possession of radar detectors in motor vehicles has been subjected to challenge. Electrolert Corporationv. Barry, 737 F.2d 110 (D.C. Cir. 1984). However, although the District is not a state, it is almost invariably treated as the functional equivalent of one. As the court noted in Milton S. Kronheim Co. v.District of Columbia, 91 F.3d 193, 198 (1996):
 . . . D.C. is not a state. Nonetheless, the same analysis applies. Our precedents dictate that we apply to local legislation of the District the same interstate commerce analysis as we would to state laws. See, e.g., Electrolert Corp. v. Barry, 737 F.2d 110 (D.C. Cir. 1984) (applying negative commerce clause analysis to District legislation banning the possession of radar detectors).
[2] In considering the propriety of possibly imposing a nationwide ban on radar detectors in private as well as commercial vehicles, the court in Airwaves Rights quoted with apparent approval the Federal Highway Administration's concern that doing so would violate principles of federalism:
 It is our view that the enforcement of speed limit laws on the highways is a problem which is common to the States and not truly national in scope. As a common state problem, we believe that the states, acting either individually or together, can effectively deal with the matter.
Id. at 798. The court further noted that while the FHWA "continued to believe that enforcement of speed limit laws was better left to the state, the authority for the proposed ban on radar detector use and possession under 49 CFR part 392 is inherent in the broad, long-standing powers conferred on the Secretary to regulate the safety on [sic] interstate motor carriers of passengers and property under Title 49 of the United States Code." Id.