The Honorable Mike Kenney State Representative 2109 W. Tulsa Street Siloam Springs, AR 72761-3821
Dear Representative Kenney:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 The Siloam Springs School District would like to issue a bond to fund new buildings. They would like to fund this bond with a local property tax increase. A group of citizens in the community contend that the sales tax ought to be raised in order to fund this bond.
Siloam Springs is a city of the first class.
Against this backdrop, you have posed the following question:
 Is it constitutional for a sales tax to be used to fund a school district's bond?
RESPONSE
In my opinion, so long as a city is acting under its statutory authority, the Arkansas Constitution would not prohibit such a use. Section 26-73-114 of the Code authorizes a city or county to levy a sales and use tax to be used by a school district for any purpose to which it could devote its "general funds." Although the term "general funds" is vague and confusing, I believe the context of A.C.A. § 26-73-114 suggests a legislative intent to allow the use of sales tax revenues to assist a local school district in retiring its bonded indebtedness. However, I doubt that the legislature intended to authorize a city to levy a sales tax that will be irrevocably dedicated as the sole revenue source to retire a school district's bonded indebtedness. Although the Code contains provisions expressly precluding the abolishment of sales taxes committed to the retirement of bonded indebtedness, no such provision applies to the tax authorized at A.C.A. § 26-73-114, which I do not believe was intended to authorize city voters to pledge sales tax revenues as the exclusive collateral securing a school district bond issue. Consequently, as a practical matter, it strikes me as highly unlikely that a school district could successfully market bonds secured only by a sales tax that the voters might revoke at their discretion.
Amendment 74 to the Arkansas Constitution authorizes the levy of ad valorem property taxes to finance the maintenance and operation of schools. Sections 6-20-1201 et seq. of the Code (Repl 1999 Supp. 2003) empower school districts to issue bonds to finance capital construction, among other things. However, no provision of constitutional or statutory law authorizes a school district directly to levy a sales tax to service such bonds. See Ark. Ops. Att'y Gen. Nos. 2003-179 and 87-385.
Notwithstanding the foregoing, the Code does provide for the dedication to school district purposes of sales and use taxes levied by a city or county. Specifically, A.C.A. § 26-73-114 (Repl. 1997) provides:
 (a) When a city or county calls an election on the issue of a sales and use tax, it may designate on the ballot that a portion of the tax will be dedicated to a school district or districts located wholly or partially within the city or county on a per capita basis.
 (b)(1) The Treasurer of State shall transmit to the treasurer or fiscal officer of each such local school district that district's share of the local sales and use taxes collected under this section at the same time as the city and county taxes are transmitted.
 (2) Funds so transmitted may be used by the school district for any purpose for which the school district's general funds may be used.
 (c) To the extent § 14-58-502 conflicts with this section, it is hereby superseded.[1]
(Emphasis added.)
The question of whether a sales and use tax may be dedicated to servicing school district debt is complicated by the highlighted passage above. The difficulty created by A.C.A. § 26-73-114(b)(2) arises from the fact that, at least for accounting purposes, there is no such thing as a "school district's general funds," thus rendering it problematic to determine how such funds "may be used." The Arkansas Department of Education's Financial Accounting Manual (January 22, 2004 (updated)), at 5, identifies the following nine funds as the exclusive categories applicable to school districts: teacher salary fund; operating fund; building fund; debt service fund; capital outlay/dedicated MO fund; federal grants fund; activity fund; food service fund; and fixed asset fund. These categories cover the entire range of a school district's financial operations, raising the question of what the legislature meant in referring to a district's "general funds." Specifically with respect to your request, the further question arises whether "general funds," once identified, might properly be used to service bonded indebtedness.
In addressing these questions, I am struck by the fact that, even though school districts do not acknowledge "general funds" as a cognizable category for accounting purposes, A.C.A. § 26-73-114(c) nevertheless appears to contemplate that sales and use tax revenues might be used to retire debt. It would defy logic, after all, for the legislature to declare superseded a statute that barred the use of "regular city taxes" to service school district bond debt if it did not intend the statute that contained this provision to cover servicing bonded indebtedness. It would appear, then, that the legislature envisioned debt retirement as being a permissible use of "general funds."
However, concluding that A.C.A. § 26-73-114 authorizes a city to dedicate a "portion" of sales tax revenues to servicing a school district's bonded indebtedness is not the equivalent of concluding that a city may commit to financing through a sales tax the issuance and retirement of an entire school bond issue, which is apparently what certain citizens of Siloam Springs are proposing to do. In determining whether the legislature has authorized the latter course, I am guided by the following basic principles. Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. City of Lowell v. M NMobile Home Park, Inc., 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996). The Supreme Court restated the restrictions on the scope of activities of municipalities in Burke v. Elmore, 341 Ark. 129, 132-33, 14 S.W.3d 872
(2000):
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
As noted in A.C.A. § 26-73-112(b), the provisions of A.C.A. § 26-75-201et seq. comprise "enabling legislation for cities and incorporated towns to levy and collect local sales and use taxes" and are consequently "applicable and controlling in the levy, election, administration, collection and enforcement of the tax." Chapter 75, subchapter 2 of title 26 of the Code deals specifically with the levying of local sales and use taxes pledged to the retirement of bonds issued to finance "capital improvements of a public nature" — a category defined to include "public education facilities." A.C.A. § 26-75-203(3)(CC). Section 26-75-210(b) of the Code provides that any portion of a city sales tax "pledged to lease rentals or bonds shall not be repealed, abolished, or reduced so long as the lease is in effect or any of such bonds are outstanding." This provision obviously exists to render such bonds properly collateralized and hence marketable. However, the bonds contemplated in A.C.A. §26-75-201 et seq. are instruments issued not by a school district, but rather by the city itself. See A.C.A. § 26-75-204(a) and 204(b) (expressly identifying the bonds at issue in that subchapter of the Code as being ones issued by the city). Accordingly, the proscription set forth at A.C.A. § 26-75-210(b) against abolishing a sales tax pledged to the retirement of bonded debt cannot be read as applying to school district bonds. No such proscription is contained in the Code relating to the sales tax authorized at A.C.A. § 26-73-114. In my opinion, then, A.C.A. § 26-73-114 should be read as authorizing a city to do no more than to dedicate a portion of a sales tax to servicing a school district's debt, subject to the crucial condition that the voters may revoke this tax at any time regardless of whether the debt has been retired.
Insofar as it only authorizes a city's contributing as much to the retirement of school district debt as the voters approve, A.C.A. §26-73-114 resembles A.C.A. § 14-58-501, which authorizes cities to make annual grants of financial aid from cities "for the purpose of assisting the school district in retiring school bonds. . . ."[2] Both statutes appear designed to enable a city to assist a school district in retiring debt. However, neither authorizes a city to effectively assume the school district's debt by committing irrevocably to discharge it.
One practical corollary of the above is that dedicating to service school district debt a portion of a sales tax levied pursuant to A.C.A. §26-73-114 can never in itself serve as a repayment pledge sufficient to render school district bonds marketable. Given the possibility that the voters or a city council may determine in any particular year to cut off funding to a school district,[3] the district could market its bonds only if it collateralized the bond issue with some other pledge of revenues. As a practical matter, then, funding a Siloam Springs School District bond issue exclusively through a city sales tax does not appear to be an available option.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Section 14-58-501 of the Code provides:
 Incorporated towns and cities of the first or second class in the State of Arkansas are empowered and authorized annually to grant financial aid to any public school district in which the town or city is located for the purpose of assisting the school district in retiring school bonds or paying the operating expenses of the district.
However, this authorization for a city to financially assist a school district in retiring its bonded indebtedness is qualified by the referenced A.C.A. § 14-58-502, which provides:
 Financial aid granted and paid to public school districts shall be paid out of any funds received by the town or city. However, payments shall not be made from the regular city taxes collected by the county or state for the town or city.
Section 26-73-114(c) expressly removes this restriction on the use of city or county sales and use tax revenues, which I believe clearly qualify as "regular city taxes."
[2] The two statutes differ, of course, in two respects: first, the voters must approve any levying or abolishment of the sales tax authorized at A.C.A. § 26-73-114, whereas the city council has the authority to approve the annual grants of financial aid authorized at A.C.A. § 14-58-501; and, secondly, A.C.A. § 14-58-502 precludes the grants of financial aid from comprising sales tax revenues. However, these differences are immaterial for purposes of my discussion.
[3] For a detailed discussion of precisely when voter approval is required to abolish a tax, see Ark. Op. Att'y Gen. No. 2002-229.