The Honorable Jonathan Barnett State Representative
1980 Highway 412 West Siloam Springs, Arkansas 72761-3805
Dear Representative Barnett:
This is my opinion on your questions about two Tontitown ordinances addressing the mayor's authority to purchase, contract, and pay money on the city's behalf.
One ordinance addresses municipal purchases and contracts, and provides in relevant part:
 (B) The Mayor . . . shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the City . . . and to make all necessary contracts for work or labor to be done, or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein, subject to the provisions of this Section.
 (C) Purchases of all supplies, apparatus, equipment, materials, and other things requisite for the city, and all contracts for work or labor to be done, shall be deemed bills, debts or liabilities asserted as claims against the city. If the amount thereof is in excess of $1.00, but less than $5,000, payment or disapproval of the bill, debt or liability shall require prior confirmation by the City Council.
Tontitown ordinance 2009-04-334, § 2(B), (C). *Page 2 
The other ordinance governs payments by check and provides in part:
 Each alderman and the Recorder/Treasurer shall be authorized to sign checks or drafts on the City accounts, unless otherwise specifically required by law. The Mayor shall not be authorized to sign checks on City accounts, unless specifically required by law. Two authorized signatures shall be required on all checks or drafts on City accounts.
Tontitown ordinance 2009-04-336, § 1.
Your questions are:
 1. Does Ordinance 2009-04-334 infringe upon the mayor's "exclusive power and responsibility to make purchases" as laid out in Ark. Code Ann. § 14-58-303 or violate any other relevant section of the Arkansas Code?
 2. May the city council legally strip the mayor of the power to countersign checks and drafts on the city's accounts and assume that power for the members of the city council in accordance with Arkansas law?
 3. If the aforementioned ordinances do not violate Arkansas law, does the mayor retain any legal means by which to approve or invalidate payments made by the city?
RESPONSE
In my opinion, Tontitown ordinance 2009-04-334, § 2(C), infringes on the mayor's statutory authority over municipal purchases and contracts to the extent it requires prior council approval of transactions that constitute municipal purchases or contracts within the mayor's statutory authority. The council may, in my opinion, preclude the mayor from signing checks on the city's accounts, provided that the council's signature rules may not negate the mayor's statutory authority over municipal purchases and contracts. *Page 3 
Question 1: Does Ordinance 2009-04-334 infringe upon the mayor's"exclusive power and responsibility to make purchases" as laid out inArk. Code Ann. § 14-58-303 or violate any other relevant section of theArkansas Code?
Authority to spend or distribute appropriated money normally belongs to a government's executive branch. See, e.g., Op. Att'y Gen. 2007-024 and authorities cited therein; Op. Att'y Gen. 2001-305.
In a city of the second class, like Tontitown, [1] executive authority "generally resides with the city council, except to the extent bestowed upon or delegated to another (such as the mayor or other municipal officer) by state statute or local ordinance." Op. Att'y Gen. 95-367; accord Op. Att'y Gen. 2000-319, 97-312, 96-328. "[T]he legislature has chosen to restrict mayoral powers" in cities of the second class. Op. Att'y Gen. 2001-156. In a city of the second class, the mayor's "restricted range of responsibilities stands in stark contrast to the much broader range of powers afforded the mayor of a city of the first class." Id.
Accordingly, unless a state or local law gives authority to some other person or body, the council of a city of the second class generally has authority to make or otherwise control municipal purchases.
Your question refers to a state law that does, in fact, authorize mayors to make certain purchases and enter into certain contracts, subject to the council's authority to prescribe purchasing procedure:
 (a) In a city of the first class, city of the second class, or incorporated town, the mayor or the mayor's duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature in the city. *Page 4 
 * * * (b)(1)(B) [T]he municipal governing body of any city of the second class . . . may provide by ordinance the procedure for making all purchases.
A.C.A. § 14-58-303 (Supp. 2009).
The statute gives mayors broad authority over the purchases and contracts described therein.[2] A predecessor in this office stated that "[i]t does not appear . . . that the city council has the authority to require prior council approval of `purchases' made by the mayor" and that "the council has [no] authority over these purchases, as long as the purchase is from previously appropriated funds." Op. Att'y Gen. 93-332. My predecessor acknowledged the council's statutory authority to establish a purchasing procedure but stated that the procedure adopted "cannot obliterate the mayor's statutory authority to make purchases." Id. Another predecessor opined that A.C.A. § 14-58-303 "unequivocally locates" in the mayor the "power to determine what contracts the city will execute." Op. Att'y Gen. 2002-093.
Section 2(C) of the Tontitown ordinance, quoted above, subjects municipal purchases in amounts between $1.00 and $5,000.00 to "prior confirmation by the City Council." I see no reason to believe that "prior confirmation," as used in the ordinance, means anything other than "prior approval." As noted above, my predecessor opined that a council is not empowered to require prior approval of purchases that are described by A.C.A. § 14-58-303. See Op. Att'y Gen. 93-332. In my opinion, then, the Tontitown ordinance's requirement of prior council confirmation infringes on the mayor's "exclusive power and responsibility" with respect to purchases and contracts that are described by A.C.A. § 14-58-303.[3] *Page 5 
Question 2: May the city council legally strip the mayor of thepower to countersign checks and drafts on the city's accounts and assumethat power for the members of the city council in accordance withArkansas law?
A predecessor in this office opined that it is generally within a council's power to exclude the mayor from signing city checks.See Op. Att'y Gen. 93-332.
The opinion stated that the council's authority is subject, however, to any state laws that expressly authorize or require the mayor to sign certain checks, citing A.C.A. § 14-58-703 (now repealed) as an example.
In my opinion, the council of a city of the second class may exclude the mayor from signing city checks, provided that the council must make exceptions for checks that, under state law, may or must be signed by the mayor, and provided *Page 6 
further that the council's rules regarding check signing may not be used to negate the mayor's statutory authority with respect to municipal purchases and contracts described by A.C.A. § 14-58-303.
Question 3: If the aforementioned ordinances do not violateArkansas law, does the mayor retain any legal means by which to approveor invalidate payments made by the city?
As discussed above, the mayor of a city of the second class has authority over certain municipal purchases and contracts under A.C.A. § 14-58-303, but the council has executive power with respect to claims against the city and other payments to the extent that they do not also constitute municipal purchases or contracts described by A.C.A. § 14-58-303.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] See Local.Arkansas.gov — County and MunicipalInformation Services — Tontitown (visited November 4, 2010) http://local.arkansas.gov/local.php?agency=Tontitown .
[2] The authority is not unlimited. Predecessors in this office have opined, for instance, that the statute does not apply to municipal purchases of real property. See Op. Att'y Gen. 2003-206, 96-351;cf. A.C.A. § 14-54-302(a) (Supp. 2009) (addressing municipal purchases and sales of real property). And a mayor may not spend money under A.C.A. § 14-58-303 without an appropriation by the council.See, e.g., Op. Att'y Gen. 2005-295, 2005-277.
[3] Section 2(C) of the Tontitown ordinance characterizes municipal purchases and contracts as "claims against the city." A state law provides that a mayor may approve or disapprove payment of "claims against the city," subject to council "confirmation."See A.C.A. § 14-58-305 (Repl. 1998). It appears, then, that section 2(C) of the ordinance is an attempt to subject all Tontitown purchases and contracts to council confirmation under A.C.A. § 14-58-305. I note in this regard that A.C.A. § 14-58-305 does not apply to cities of the second class.Cf. Burke v. Elmore, 341 Ark. 129, 14 S.W.3d 872 (2000), and Op. Att'y Gen. 87-250 (before its 2001 amendment, A.C.A. § 14-58-303, which like A.C.A. § 14-58-305 was enacted as part of Act 28 of 1959, applied to cities of first class only; A.C.A. § 14-58-305 has not been so amended). Accordingly, absent an ordinance giving the mayor some authority over claims against the city, the council of a city of the second class has adequate executive authority to approve or disapprove claims against the city that do not also constitute purchases or contracts described by A.C.A. § 14-58-303. I note further, however, that the council may not negate the mayor's statutory authority by simply declaring that all purchases and contracts are claims. This office has previously considered questions, and left some unanswered, about the nature of the purchases, contracts, and claims addressed by the two statutes, and the extent to which they may overlap or conflict.See Op. Att'y Gen. 2005-277 (relationship between A.C.A. §§ 14-58-303 and-305 "unclear and requires legislative clarification"), 93-332 (unclear how or if A.C.A. § 14-58-305 applies to purchases; statutes "simply do not afford a definitive answer"). At the very least, however, it is my view that there is not complete identity between municipal purchases and contracts, on the one hand, and claims against the city, on the other. Both having been adopted as parts of the same act, "[a] strong presumption . . . applies that the statutes are compatible, merely addressing different circumstances." Op. Att'y Gen. 2005-277. If the legislature had understood all municipal purchases and contracts to constitute claims against a city, and all claims to constitute purchases or contracts, there would have been no need or point in providing for different council authority (establishment of purchasing procedure v. confirmation) with respect to them. It appears, then, that the council of a city of the second class may legislate as it chooses with respect to claims against the city, but it may not thereby negate the mayor's statutory authority over purchases and contracts to the extent, if any, that such claims also constitute purchases or contracts described by A.C.A. § 14-58-303. *Page 1